| | | |
|---|---|---|
| HILARIO RAZURA JIMENEZ, JOSE | ) | |
| MANUEL GUERRERO GOMEZ, | ) | |
| J. REFUGIO CASTELLON LUNA, | ) | |
| GUILLERMO BERNAL ORTEGA, | ) | |
| RIGOBERTO TORRES GUERRERO, | ) | |
| DIEGO FLORES CICERNOS, | ) | |
| RUBEN MADERA CANALES, LUIS A | ) | Civil Action No. 3:11-0276 |
| ALBERTO MEDINA AYON, ALVARO | ) | |
| MORALES VILLEGAS, MELCHOR | ) | |
| JAVIER CASTANEDA GALLARDO, | ) | Jury Demand |
| JOSE CASIMIRO BENAVIDES | ) | |
| FRIAS, EDGARDO IBARRA RUIZ, | ) | |
| HUGO IGNACIO IBARRA RUIZ, | ) | |
| MIGUEL ANGEL GOMEZ NUNO, | ) | |
| OSCAR RODRIGUEZ GOMEZ, | ) | |
| and TEODULO HUIZAR MADERA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VANDERBILT LANDSCAPING LLC, | ) | |
| LARRY VANDERBILT SR., JOFFREY | ) | |
| VANDERBILT, ONESOURCE | ) | |
| LANDSCAPE AND GOLF SERVICES, | ) | |
| INC., ABM SERVICES INC, and ABM | ) | |
| INDUSTRIES, INCORPORATED | ) | |
| | | |
| Defendants. | | |

---

## FIRST AMENDED COMPLAINT

---

### PRELIMINARY STATEMENT

1.  This action is brought by temporary H-2B guestworkers who were trafficked into the

United States from Mexico and subjected to forced labor on contracts with the Tennessee

Department of Transportation for highway mowing and litter removal on Tennessee's highways and interstates.

2.   After receiving close to a million dollars in stimulus loans designated for job creation and winning over 2 million dollars in state contracts, Vanderbilt Landscaping LLC[1] hired H-2B guestworkers from Mexico and subjected them to a scheme of constant surveillance, threats of serious harm and abuse of the legal process, and psychological coercion.  These actions were taken to maintain control over the foreign guestworkers.

3.   Recognizing that the cruelty of these conditions would drive the guestworkers to seek to escape, Vanderbilt Landscaping LLC CEO Larry Vanderbilt confiscated the guestworkers' passports and visas.

4.   In addition to holding their passports and visas, Vanderbilt Landscaping LLC forced the guestworkers to live on property it controlled, prohibited workers from leaving the property except when accompanied by a supervisor, and threatened the workers with unlawful arrest, eviction, and deportation.  To the guestworkers, the visible firearms Vanderbilt managers carried and handled publicly enforced the state of constant surveillance and terror.

5.   The Vanderbilt Defendants also took advantage of the rules of the H-2B guestworker program – which render guestworkers completely dependent on their sponsoring employer for legal status and employment – to further coerce and threaten the guestworkers.

6.   The guestworkers were increasingly terrified and trapped in a situation of forced labor. They had no choice but to continue laboring on the Vanderbilt Defendants' Tennessee Department of Transportation (TDOT) contracts in illegal conditions, even though they wanted to escape or change the conditions of forced labor.  Deep in debt for the visa, transportation, and recruitment costs and without their passports, the guestworkers could not leave and return to

---

[1] Defendant Vanderbilt Landscaping LLC is not affiliated with Vanderbilt University.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 2 of 37 PageID #: 82

Mexico. At the same time, they faced threats and humiliation when they attempted to improve the conditions of forced labor.

7. When a small group of workers did begin to voice complaints, resist the forced labor, and attempt to change the conditions, the retaliation was swift. The Vanderbilt Defendants conducted a forced private deportation of Plaintiff Jose Manuel Guerrero Gomez, sending a clear message to the rest of the workforce. Plaintiffs Hilario Razura Jiménez and Refugio Castellon Luna escaped to avoid a similar fate.

8. Guestworkers employed by the Vanderbilt Defendants in 2010 assert claims arising from violations of their rights under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("WWTVPRA"); the Thirteenth Amendment; the Civil Rights Act of 1866 (42 U.S.C. § 1981); and the Fair Labor Standards Act ("FLSA"); and claims for damages arising from fraud and breach of contract. Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna also bring claims arising from the retaliation in violation of the Tennessee Whistleblower's Act (Tenn. Code Ann. § 50-1-304 ), the Civil Rights Act of 1866 (42 U.S.C. § 1981); the Ku Klux Klan Act of 1871 (42 U.S.C. § 1985), the Fair Labor Standards Act (FLSA), and retaliatory discharge. Plaintiff Jose Manual Guerrero Gomez also brings outrageous conduct and false imprisonment claims for the Vanderbilt Defendants' retaliatory private deportation.

9. Guestworkers employed by the Onesource Defendants in 2009 assert claims arising from violations of their rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981) and the Fair Labor Standards Act (FLSA) and claims for damages arising from fraud and breach of contract.

## JURISDICTION

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 18 U.S.C. § 1595(a) (civil trafficking), 28 U.S.C. § 1343 (civil rights), and 29 U.S.C. § 216(b) (FLSA).

11. This Court has supplemental jurisdiction over causes of action based on state law pursuant to 28 U.S.C. § 1367(a), as the state law claims arise out of the same nucleus of facts which support the federal claims.

## VENUE

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

13. Plaintiffs are Hispanic, Mexican nationals and former or current H-2B guestworkers who were recruited from Mexico and employed by Defendants as H-2B guestworkers in 2009 and/or 2010.

14. Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna ("2010 Plaintiffs") were employed as guestworkers by the Vanderbilt Defendants in 2010.

15. Hilario Razura Jiménez, Jose Manuel Guerrero Gómez, Guillermo Bernal Ortega, Rigoberto Torres Guerrero, Diego Flores Cicernos, Ruben Madera Canales, Luis Alberto Medina Ayon, Alvaro Morales Villegas, Melchor Javier Castaneda Gallardo, Jose Casimiro Benavides Frias, Edgardo Ibarra Ruiz, Hugo Ignacio Ibarra Ruiz, Miguel Angel Gómez Nuno, Oscar Rodriguez Gomez, and Teoduro Huizar Madera ("2009 Plaintiffs") were employed as guestworkers by the Onesource Defendants in 2009.

16. Plaintiffs are indigent migrant workers whose livelihoods depend on their ability to enter the United States to work lawfully.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 4 of 37 PageID #: 84

17. Many Plaintiffs primarily earn a living in Mexico working in the tobacco fields earning approximately $6.00 per day.

18. Plaintiffs speak Spanish as their native language. They speak little or no English.

19. At all relevant times, Plaintiffs were engaged in interstate commerce and/or in the production of goods for sale in interstate commerce.

20. Defendant Vanderbilt Landscaping LLC is a limited liability corporation organized under the laws of the State of Tennessee.

21. Defendant Vanderbilt Landscaping LLC's 2010 revenue was $3.1 million with an expectation of $5 million by the fourth quarter of 2011.

22. In 2010, Defendant Vanderbilt Landscaping LLC received a $900,000 loan guarantee from the U.S.D.A. under the American Recovery and Reinvestment Act (the so-called "stimulus" act). USDA targeted the loans for "creating and retaining quality jobs and serving difficult-to-reach populations and areas hardest hit by the current economic downturn."

23. From at least 2009 to the present, Defendant Vanderbilt Landscaping LLC has held over $2 million dollars in contracts with the Tennessee Department of Transportation ("TDOT") for highway mowing and litter removal contracts on Tennessee's highways and interstates.

24. In 2010, the Vanderbilt Defendants imported H-2B guestworkers to work on its TDOT highway mowing and litter removal contracts.

25. In 2010, Larry Vanderbilt Sr. was the Chief Executive Officer of Vanderbilt Landscaping LLC.

26. In 2010, Joffrey Vanderbilt was the Chief Financial Officer of Vanderbilt Landscaping LLC.

27. The principal office of Vanderbilt Landscaping LLC is 650 Mason Malone Road, Mason TN.

28. A second office of Vanderbilt Landscaping LLC is 1084 Courier Place, Ste. 702., Smyrna, TN.

29. Throughout this complaint Defendants Vanderbilt Landscaping LLC, Larry Vanderbilt Sr., and Joffrey Vanderbilt are collectively referred to as the "Vanderbilt Defendants."

30. At all relevant times for this action, Defendant Onesource Landscape & Golf Services, Inc. was a corporation registered under the laws of the state of Delaware.

31. At all relevant times for this action, Onesource Landscape & Golf Services, Inc. was registered to and was conducting business in the state of Tennessee.

32. Defendant ABM Services Inc. is the current legal name of Onesource Landscape and Golf Services Inc. ABM Services Inc. is a corporation organized under the laws of the state of Delaware.

33. Defendant ABM Industries, Inc. is a corporation organized under the laws of the state of Delaware. On information and belief, ABM Services, Inc. is a wholly owned subsidiary of, and is controlled by, ABM Industries Inc.

34. Throughout this complaint Defendants Onesource Landscape & Golf Services Inc., ABM Services, Inc., and ABM Industries, Inc.are collectively referred to as the "Onesource Defendants."

35. On information and belief, Onesource Landscape and Golf, Inc. occasionally did business during 2009 as "ABM Janitorial and Landscape Services".

36. In 2009, the Onesource Defendants held contracts with the Tennessee Department of Transportation ("TDOT") for highway mowing and litter removal contracts on Tennessee's highways and interstates.

37. In 2009, the Onesource Defendants imported H-2B guestworkers to work on TDOT highway mowing and litter removal contracts.

38. In 2009, Larry Vanderbilt Sr. was Vice-President of Onesource Landscape and Golf Services, Inc.

39. Guestworkers in the 2009 season were paid on checks from both Onesource Landscape and Golf Services, Inc.and ABM Janitorial and Landscape Services.

## LEGAL FRAMEWORK

40. Pursuant to the Immigration and Nationality Act 8 U.S.C. § 1101(a)(15)(H)(ii)(b) an employer may import temporary workers to the U.S. under the H-2B program to perform temporary, nonagricultural labor if qualified U.S. workers are not available to perform such jobs.

41. The employer must offer the jobs to the temporary H-2B guestworkers on the same terms and conditions that he initially advertised the jobs to U.S. workers.

42. To participate in the program, the employer must swear under penalty of perjury that he will comply with all federal, state, and local laws regulating employment.

43. Visas issued under the H-2B program are made out to both the sponsoring employer and the prospective foreign worker.

44. The foreign worker is bound to the sponsoring employer and if the employer terminates the employment relationship – even illegally – the worker loses his legal status to work or remain in the United States.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 7 of 37 PageID #: 87

45. To obtain H-2B workers, an employer must submit an Application for Alien Employment Certification, Form ETA 9142 ("Labor Certification Application") to the U.S. Department of Labor.

46. Section I(2) of the Application includes a number of "Certifications" by the employer, including the following:

> 4.    The offered terms and working conditions of the job opportunity are normal to workers similarly employed in the area(s) of intended employment and are not less favorable than those offered to the foreign worker(s) and are not less than the minimum terms and conditions required by Federal regulation at 20 CFR 655, Subpart A.
>
> 5.    The offered wage equals or exceeds the highest of the prevailing wage, the applicable Federal, State, or local minimum wage, and the employer will pay the offered wage during the entire period of the approved labor certification.
> …
> 7.    During the period of employment that is the subject of the labor certification application, the employer will comply with applicable Federal, State and local employment related laws and regulations, including employment related health and safety laws;

47.  The Application requires the employer to declare, under penalty of perjury, that he has read and reviewed the Application, that all the information is true and accurate to the best of his knowledge, and that he will comply with the certifications.

48. The DOL evaluates the Application and relies on the employer's representations in determining whether to approve the Application.  If the DOL approves the Application, it issues a "labor certification" to certify the need for employment of temporary foreign guestworkers.

49. The employer then submits the labor certification to United States Citizenship and Immigration Services ("USCIS") along with a petition for a non-immigrant worker visa, Form

I-129. If USCIS approves the Form I-129, the employer then sends notice of the approval to the U.S. Consulate Offices in the area from which the employer is recruiting prospective temporary foreign guestworkers.

## FACTUAL ALLEGATIONS

<u>2010 Season</u>

50. For the 2010 season, the Vanderbilt Defendants obtained H-2B visas from the U.S. government for Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna ("2010 Plaintiffs"), among others, to work on its landscaping contracts, including Tennessee state contracts for highway and interstate mowing and litter removal.

51. When the 2010 Plaintiffs arrived in Tennessee from Mexico, the Vanderbilt Defendants confiscated the 2010 Plaintiffs' passports and H-2B visas.

52. The Vanderbilt Defendants imported 2010 Plaintiffs and other workers to its labor camps in Mason, TN and Smyrna, TN.

53. Defendant Larry Vanderbilt Sr. supervised and controlled the housing and work at the Mason site. Defendant Joffrey Vanderbilt supervised and controlled the housing and work at the Smyrna site.

54. When Plaintiff Refugio Castellon Luna and other guestworkers arrived at the Mason site from Mexico, Larry Vanderbilt Sr. told them that he was confiscating their passports and visas so that guestworkers would not be free to leave and return to Mexico during the contract without his permission.

55. The Vanderbilt Defendants required the 2010 Plaintiffs to live in inhumane and surveilled housing and attempted to prohibit the 2010 Plaintiffs from leaving the labor camp property unless they were accompanied by a supervisor.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 9 of 37 PageID #: 89

56. Defendant Larry Vanderbilt Sr. threatened workers that if they left the labor camp property without permission, he would report them to immigration and burn their passports.

57. One of the Vanderbilt Defendants' supervisors lived at the labor camps and reported regularly to the managers via cell phone and radio.

58. Each pay period, the Vanderbilt Defendants collected rent from the 2010 Plaintiffs and other guestworkers.

59. The trailers and houses provided to the 2010 Plaintiffs by the Vanderbilt Defendants were overcrowded, unsafe, and violated labor camp standards pursuant to the Tennessee Occupational Safety and Health Act. TOSHA found multiple serious violations of federal and state rules governing labor camps, 29 C.F.R. § 1910.142.

60. The Vanderbilt Defendants housed only the Mexican H-2B workers in its labor camps. Upon information and belief, workers of non-Hispanic descent and workers who were U.S. citizens were not required to live in and/or pay for accommodations in the Vanderbilt Defendants' labor camps. The Vanderbilt Defendants also referenced the 2010 Plaintiffs' race, ethnicity, ancestry, and/or alienage in their abusive threats of deportation and other hostile, intimidating, and offensive actions towards the 2010 Plaintiffs.

61. The Vanderbilt Defendants did not pay the 2010 Plaintiffs for all the hours worked and regularly forced the 2010 Plaintiffs to perform work without compensation.

62. The earnings of the 2010 Plaintiffs at times totaled less than the amount due under the applicable prevailing wage rate, 20 C.F.R. § 655.102(b)(9).

63. The Vanderbilt Defendants regularly threatened 2010 Plaintiffs and other H-2B workers that if they did not continue working for Defendants, or did not work according to Defendants' specifications, the 2010 Plaintiffs would be deported back to Mexico, reported to immigration

and/or other law enforcement authorities, and/or prohibited from ever returning to the United States.

64. During the course of the 2010 Plaintiffs' employment, the Vanderbilt Defendants failed to comply with material terms and conditions of employment offered to the 2010 Plaintiffs in the labor certification application submitted to the U.S. Department of Labor.

65. The 2010 Plaintiffs received a written contract in Mexico that contained some of the terms in the Application and incorporated DOL requirements as a matter of law, including, *inter alia*, (a) the terms offered in the labor certification application submitted by Defendants to the U.S. Department of Labor to obtain permission to import foreign workers; (b) the terms of work set forth in the federal regulations governing Plaintiffs' visas, 20 C.F.R. § 655.102; (c) the length of the contract as set forth on each worker's H-2B visa; and (d) the assurances set forth in 20 C.F.R. § 655.103.

66. Specifically, the 2010 Plaintiffs' work contracts offered, *inter alia*, the following terms of work:

    i.      Wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate;

    ii.     Payment of all visa, transportation, and recruitment expenses as required by Mexican Federal Labor Law, Title II, Chapter I, Article 28;

    iii.    An assurance that Defendant would not intimidate, threaten, restrain, coerce, blacklist, discharge, and/or in any manner discriminate against any person who with just cause asserts rights or protections afforded under the H-2B program; and,

    iv.    An assurance that Defendant would comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws.

67. During the course of the 2010 Plaintiffs' employment, the Vanderbilt Defendants:

i. Failed to pay wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate for each of the hours that Plaintiffs worked;

ii. Failed to pay visa, transportation, and recruitment expenses;

iii. Intimidated, threatened, restrained, coerced, blacklisted, discharged, and/or discriminated against 2010 Plaintiffs who asserted rights and protections afforded under the H-2B program; and,

iv. Failed to comply with applicable federal, state, and local employment-related laws and regulations including failing to pay for all hours of work.

68. Although the conditions of the 2010 Plaintiffs' employment with the Vanderbilt Defendants were inhumane, psychologically degrading, and unlawful, the 2010 Plaintiffs feared the consequences of leaving the labor camps without their passports and visa, including arrest, detention, and the ability to obtain future visas to work in the United States on which their families' livelihoods depend.

69. The 2010 Plaintiffs reasonably feared that, without their passports and visas, they could be arrested and detained by immigration or other law enforcement authorities.

70. Without their identification and immigration documents, the 2010 Plaintiffs reasonably believed that the actions and statements of the Vanderbilt Defendants' were threatening and coercive and felt forced to continue working for theVanderbilt Defendants despite terrible working conditions.

71. Defendant Larry Vanderbilt Sr. regularly berated and insulted 2010 Plaintiffs and other H-2B workers at daily meetings preparing for work when they worked from the Mason labor camp. Defendant Joffrey Vanderbilt held similar morning meetings in Smyrna, where he threatened and intimidated workers.

72. Defendant Larry Vanderbilt Sr. singled out Plaintiff Refugio Castellon Luna for particular humiliation and punishment because Plaintiff Castellon Luna attempted to and did

exercise his statutory and/or constitutional rights including working collectively to defend his own rights and the rights of other workers. The rights Plaintiff Castellon Luna was defending included the right to be free from involuntary servitude and forced labor, the right to minimum wage, the right to be free from discrimination, the right to free speech, and the right to work together with other workers to improve the forced labor conditions.

73. The Vanderbilt Defendants knowingly created reasonably and objectively intolerable working condition for Plaintiff Castellon Luna with the intention of silencing and/or forcing him to resign – in debt and unable to support his family – to further humiliate and coerce the remaining guestworkers to continue working under conditions of forced labor and trafficking without complaint or action to change the conditions.

74. Eventually Plaintiff Castellon Luna was able to escape the Vanderbilt Defendants' labor camp with the help of his family.

75. Plaintiffs Hilario Razura Jiménez and Jose Manuel Guerrero Gomez reached out publicly for help liberating themselves and the other workers from forced labor, including seeking out information on U.S. laws protecting workers, educating other guestworkers about their legal rights, documenting illegal conditions, and contacting the U.S. Department of State's human trafficking hotline from a brochure received at the U.S. Consulate in Monterrey. The rights Plaintiffs Razura Jiménez and Guerrero Gomez were defending included the right to be free from involuntary servitude and forced labor, the right to minimum wage, the right to be free from discrimination, the right to free speech, and the right to work together with other workers to improve the forced labor conditions.

76. Plaintiffs Razura Jiménez and Guerrero Gomez conducted these activities in secret because they feared retaliation from the Vanderbilt Defendants.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 13 of 37 PageID #: 93

77. In August 2010, Joffrey Vanderbilt one of Vanderbilt Landscaping's managers and the son of CEO Larry Vanderbilt Sr., discovered the actions Plaintiffs Razura Jiménez and Guerrero Gomez were undertaking to defend their rights and the rights of the other guestworkers.

78. Joffrey Vanderbilt and other Vanderbilt managers interrogated many of the workers including Plaintiffs Razura Jimenez and Guerrero Gomez and threatened them with deportation.

79. The 2010 Plaintiffs reasonably interpreted the aggressive interrogations and threats of deportation as threatening gestures and were increasingly afraid of Vanderbilt Defendants and its managers.

80. During the time of the interrogations, another Vanderbilt Landscaping LLC manager took out a firearm and cocked it above his head in front of the guestworkers after work in front of the Vanderbilt Defendants' office. The guestworkers had already seen that several of the Vanderbilt Landscaping LLC managers carried firearms. This incident caused Plaintiffs Guerrero Gomez and Razura Jiménez to feel even more fearful of the Vanderbilt Defendants and to believe that the Vanderbilt Defendants were capable of and willing to inflict harm on them to continue the forced labor system.

81. On Friday, August 6, 2010, Joffrey Vanderbilt and other managers called Plaintiff Guerrero Gomez to the office. They called the other guestworkers to wait outside the office.

82. Joffrey Vanderbilt threatened to deport Plaintiff Guerrero Gomez and burn his passport and visa with the U.S. Consulate. Plaintiff Guerrero Gomez understood this as a threat of permanent blacklisting from the H-2B program.

83. Eventually, Larry Vanderbilt Jr. drove Plaintiff Guerrero Gomez back to the labor camp, instructed him to pack his belongings, took him back to the office, and then to the bus station.

During that time the Vanderbilt Defendants unlawfully and unreasonably detained Plaintiff Guerrero Gomez against his will and consent and he was not free to leave.

84. At the bus station, Larry Vanderbilt Jr. walked with Mr. Guerrero Gomez to the ticket counter, standing in close physical proximity, and directed Plaintiff Guerrero Gomez to purchase a ticket to Mexico. He stood in close proximity monitoring the ticket purchase. During that time the Vanderbilt Defendants unlawfully and unreasonably detained Plaintiff Guerrero Gomez against his will and consent and ensuring that he was not free to leave. Plaintiff Guerrero Gomez had no choice but to purchase the ticket with money from his final paycheck.

85. Larry Vanderbilt Jr. remained at the bus station in close proximity to Mr. Guerrero Gomez until Plaintiff Guerrero Gomez boarded the bus to Mexico. Plaintiff Guerrero Gomez could see that Larry Vanderbilt Jr. remained at the bus station as the bus pulled away.

86. From the time of the meeting in the manager's office until the departure of the bus for Mexico, the Vanderbilt Defendants unlawfully and unreasonably detained Plaintiff Guerrero Gomez against his will and consent and ensured he was not free to leave.

87. The Vanderbilt Defendants deliberately conducted this retaliatory private deportation in front of the rest of the guestworkers to additionally force them to remain working in a situation of forced labor without trying to improve the conditions or escape.

88. That evening, fearing that he would also be targeted for a private deportation for his actions, including seeking out information on U.S. laws protecting workers, educating other guestworkers about their legal rights, documenting illegal conditions, and contacting the U.S. Department of State's human trafficking hotline from the brochure he received at the U.S. Consulate in Monterrey, Plaintiff Razura Jiménez secretly escaped at night without the knowledge of the Vanderbilt Defendants.

89. The Vanderbilt Defendants terminated Plaintiff Guerrero Gomez and constructively discharged Plaintiffs Razura Jiménez and Castellon Luna solely for refusing to remain silent about the Vanderbilt Defendants' activities in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare including minimum wage, anti-discrimination laws, health and safety laws, and the right to free speech and association.

90. The Vanderbilt Defendants, their employees, and agents, conspired, agreed, planned, and coordinated actions to deprive Plaintiffs Razura Jimenez, Guerrero Gomez, and Castellon Luna of equal protection of the laws and their rights under the Thirteenth Amendment to the United States Constitution and its implementing and enforcing statutes (interalia 18 U.S.C. §§ 1589, 1590) to be free from forced labor and trafficking in persons and to exercise their Constitutional right to travel.

91. The Vanderbilt Defendants, and their employees, and agents were motivated by racial, anti-Hispanic, and/or anti-immigrant animus when they conspired to deprive the Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights and/or acted in furtherance of a conspiracy to deprive Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights.

92. The Vanderbilt Defendants knowingly, willfully, maliciously, intentionally, and without justification planned and acted to deprive Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights.

93. While working for theVanderbilt Defendants in 2010, the 2010 Plaintiffs were engaged in the production of goods for commerce as that phrase is used in the FLSA.

94. At all times relevant to this action, the 2010 Plaintiffs were employed by the Vanderbilt Defendants within the meaning of 29 U.S.C. § 203(g).

95. At all times relevant to this action, each of the 2010 Plaintiffs was an "employee" of the Vanderbilt Defendants within the meaning of 29 U.S.C. § 203(e).

96. At all times relevant to this action, each of the Vanderbilt Defendants were the employers of each Plaintiff within the meaning of 29 U.S.C. § 203(d).

97. The Vanderbilt Defendants, individually and through their agents, employees, and/or representatives, knowingly made materially false and untrue statements and representations to the 2010 Plaintiffs and the U.S. Government regarding the nature and terms and conditions of employment in the United States including the amount of hours per week and workplace conditions.

98. The Vanderbilt Defendants intended that the false statements and representations and/or their agents, employees, and/or representatives regarding the nature and terms and conditions of employment in the United States including the amount of hours per week and workplace conditions would induce the 2010 Plaintiffs to leave their homes and jobs in Mexico and travel to the United States to work for Defendant.

99. The 2010 Plaintiffs reasonably relied on the Vanderbilt Defendants' representations, including that the employers would comply with applicable labor laws.

100. Based on the false representations by the Vanderbilt Defendants, the 2010 Plaintiffs paid significant sums of money to the Vanderbilt Defendants and/or their agents, employees and/or representatives and other entities at their direction.

101. Based on the false representations by the Vanderbilt Defendants, the 2010

Plaintiffs left their homes and jobs in Mexico and traveled to the United States to work for Defendants.

102.     The Vanderbilt Defendants' required the 2010 Plaintiffs, as a condition of being hired, to pay various fees and expenses, including but not limited to point-of-hire transportation fees, visa fees, hiring expenses and daily subsistence during travel from their hometowns in Mexico to Tennessee.

103.     As a matter of practice and policy each season, the Vanderbilt Defendants did not reimburse Plaintiffs for any of the point-of-hire transportation fees, visa fees, and hiring expenses incurred by Plaintiffs described in paragraph 102 during the first workweek of each worker's respective year of work for Defendant.

104.     As a matter of practice and policy each season, the Vanderbilt Defendants did not take the expenses set forth in paragraph 102 into account in determining whether the 2010 Plaintiffs earned at least the minimum wage or the prevailing wage during the first workweek.

105.     The point-of-hire transportation, visa, and hiring expenses described in paragraph 102 were primarily for the benefit of the Vanderbilt Defendants.

106.     The point-of-hire transportation, visa, and hiring expenses set forth in paragraph 102 operated as de facto deductions from the wages of the 2010 Plaintiffs causing them to earn less than the minimum wage for each hour worked during their first workweek.

107.     The 2010 Plaintiffs could not obtain these jobs without paying these point-of-hire transportation, visa, and hiring expenses.

108.     All actions and omissions alleged herein were undertaken by the Vanderbilt Defendants either directly and/or through their agents.

109.    The Vanderbilt Defendants were on notice of their obligations to H-2B employees under the FLSA, and the Vanderbilt Defendants' failure to pay the 2010 Plaintiffs the minimum wage was willful.

110.    As a result of the Vanderbilt Defendants' discriminatory and retaliatory measures, the 2010 Plaintiffs have suffered and continue to suffer substantial damages, including emotional distress and mental anguish.

2009 Season

111.    For the 2009 season, the Onesource Defendants and Defendant Larry Vanderbilt Sr. obtained H-2B visas from the U.S. government for Plaintiffs Hilario Razura Jiménez, Jose Manuel Guerrero Gómez, Guillermo Bernal Ortega, Rigoberto Torres Guerrero, Diego Flores Cicernos, Ruben Madera Canales, Luis Alberto Medina Ayon, Alvaro Morales Villegas, Melchor Javier Castaneda Gallardo, Jose Casimiro Benavides Frias, Edgardo Ibarra Ruiz, Hugo Ignacio Ibarra Ruiz, Miguel Angel Gómez Nuno, Oscar Rodriguez Gomez, and Teoduro Huizar Madera ("2009 Plaintiffs") to work on its landscaping contracts, including Tennessee state contracts for highway and interstate mowing and litter removal.

112.    The Oncesource Defendants and Defendant Larry Vanderbilt Sr. required the 2009 Plaintiffs to live in inhumane and surveilled housing.

113.    One of the supervisors lived at the camp and reported regularly to Defendant Larry Vanderbilt Sr., Vice President of Onesource Landscape and Golf Services, Inc., via cell phone and radio.

114.    The trailers and houses were overcrowded, unsafe, and violated labor camp standards pursuant to the Tennessee Occupational Safety and Health Act.

115.     The Onesource Defendants and Defendant Larry Vanderbilt Sr. collected rent each pay period from the 2009 Plaintiffs and other guestworkers.

116.     The Onesource Defendants and Defendant Larry Vanderbilt Sr. housed only the Mexican H-2B workers in its labor camps. Upon information and belief, workers of non-Hispanic descent and workers who were U.S. citizens were not required to live in and/or pay for accommodations in Defendant Onesource's Defendants' labor camps. The Onesource Defendants and Defendant Larry Vanderbilt Sr. referenced the 2009 Plaintiffs' race, ethnicity, and/or alienage in their abuse threats of deportation and other hostile actions towards the 2009 Plaintiffs.

117.     As a result of the discriminatory measures by the Onesource Defendants and Defendant Larry Vanderbilt Sr., the 2009 Plaintiffs have suffered substantial damages, including emotional distress and mental anguish.

118.     The earnings of the 2009 Plaintiffs at times totaled less than the amount due under the applicable prevailing wage rate, 20 C.F.R. § 655.102(b)(9).

119.     During the course of the 2009 Plaintiffs' employment, the Onesource Defendants and Defendant Larry Vanderbilt Sr. failed to comply with material terms and conditions of employment offered to the 2009 Plaintiffs in the clearance orders submitted to the U.S. Department of Labor.

120.     The 2009 Plaintiffs received a written contract in Mexico that contained some of the terms in the Application and incorporated DOL requirements as a matter of law, including, *inter alia*, (a) the terms offered in the "clearance orders" submitted by Defendant to the U.S. Department of Labor to obtain permission to import foreign workers; (b) the terms of work set forth in the federal regulations governing Plaintiffs' visas, 20 C.F.R. § 655.102; (c) the length of

the contract as set forth on each worker's H-2B visa; and (d) the assurances set forth in 20 C.F.R. § 655.103.

121.     Specifically, the 2009 Plaintiffs' work contracts offered, *inter alia*, the following terms of work:

    i.      Wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate;

    ii.    Payment of all visa, transportation, and recruitment expenses as required by Mexican Federal Labor Law, Title II, Chapter I, Article 28;

    iii.   An assurance that Defendant would not intimidate, threaten, restrain, coerce, blacklist, discharge, and/or in any manner discriminate against any person who with just cause asserts rights or protections afforded under the H-2B program; and,

    iv.   An assurance that Defendant would comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws.

122.     During the course of Plaintiffs' employment, the Onesource Defendants:

    i.      Failed to pay wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate for each of the hours that Plaintiffs worked;

    ii.    Failed to pay visa, transportation, and recruitment expenses;

    iii.   Intimidated, threatened, restrained, coerced, blacklisted, discharged, and/or discriminated against Plaintiffs who asserted rights and protections afforded under the H-2B program; and,

    iv.   Failed to comply with applicable federal, state, and local employment-related laws and regulations; and failed to pay Plaintiffs for all hours worked.

123.     While working for the Onesource Defendants and Defendant Larry Vanderbilt Sr., the 2009 Plaintiffs were engaged in the production of goods for commerce as that phrase is used in the FLSA.

124. At all times relevant to this action, the 2009 Plaintiffs were employed by the Onesource Defendants and Defendant Larry Vanderbilt Sr. within the meaning of 29 U.S.C. § 203(g).

125. At all times relevant to this action, each 2009 Plaintiff was an "employee" of the Onesource Defendants and Defendant Larry Vanderbilt Sr. within the meaning of 29 U.S.C. § 203(e).

126. At all times relevant to this action, the Onesource Defendants and Defendant Larry Vanderbilt Sr. were the employer of each of the 2009 Plaintiffs within the meaning of 29 U.S.C. § 203(d).

127. The Onesource Defendants and Defendant Larry Vanderbilt Sr., individually and through their agents, employees, and/or representatives, knowingly made materially false and untrue statements and representations to 2009 Plaintiffs and the U.S. Government regarding the nature and terms and conditions of employment in the United States including the amount of hours per week and workplace conditions.

128. The Onesource Defendants and Defendant Larry Vanderbilt Sr. intended that the false statements made by them and/or their agents, employees, and/or representatives about the amount of work and workplace conditions would induce the 2009 Plaintiffs to leave their homes and jobs in Mexico and travel to the United States to work for Defendants.

129. The 2009 Plaintiffs were entitled to rely on Defendants' representations including that the employers would comply with applicable labor laws.

130. Based on the false representations by the Onesource Defendants and Defendant Larry Vanderbilt Sr., the 2009 Plaintiffs paid significant sums of money to Defendant and/or his agents, employees and/or representatives.

131.     Based on the false representations by the Onesource Defendants and Defendant Larry Vanderbilt Sr., the 2009 Plaintiffs left their homes and jobs in Mexico and traveled to the United States to work for Defendant.

132.     The Onesource Defendants and Defendant Larry Vanderbilt Sr., as a condition of hiring, required the 2009 Plaintiffs to pay various fees and expenses, including but not limited to point-of-hire transportation fees, visa fees, hiring expenses and daily subsistence during travel from their hometowns in Mexico to Tennessee.

133.     As a matter of practice and policy each season, the Onesource Defendants and Defendant Larry Vanderbilt Sr. did not reimburse Plaintiffs for any of the point-of-hire transportation fees, visa fees, and hiring expenses incurred by the 2009 Plaintiffs described in paragraph 132 during the first workweek of each worker's respective year of work for the Onesource Defendants.

134.     As a matter of practice and policy each season, the Onesource Defendants and Defendant Larry Vanderbilt Sr. did not take the expenses set forth in paragraph 132 into account in determining whether the 2009 Plaintiffs earned at least the minimum wage or the prevailing wage during the first workweek.

135.     The point-of-hire transportation, visa, and hiring expenses described in paragraph 132 were primarily for the benefit of the Onesource Defendants and Defendant Larry Vanderbilt Sr.

136.     The point-of-hire transportation, visa, and hiring expenses set forth in paragraph 132 operated as de facto deductions from the wages of the 2009 Plaintiffs causing them to earn less than the minimum wage for each hour worked during their first workweek.

137.     The 2009 Plaintiffs could not obtain these jobs without paying these point-of-hire transportation, visa, and hiring expenses.

138.     All conditions precedent to this action have been satisfied.

139.     All actions and omissions alleged herein were undertaken by the Onesource Defendants and Defendant Larry Vanderbilt Sr. either directly and/or through their agents.

140.     The Onesource Defendants and Defendant Larry Vanderbilt Sr. were on notice of their obligations to H-2B employees under the FLSA, and the Onesource Defendants and Defendant Larry Vanderbilt Sr.'s failure to pay the 2009 Plaintiffs the minimum wage was willful.

## FIRST CLAIM FOR RELIEF
THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION
REAUTHORIZATION ACT OF 2008
Forced Labor (18 U.S.C. § 1589),
Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor,
(18 U.S.C. § 1590),
Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery,
involuntary servitude, or forced labor (18 U.S.C. § 1592)
Benefitting financially from peonage, slavery, and trafficking in persons (18 U.S.C. §
1593A)
*The 2010 Plaintiffs' claim against the Vanderbilt Defendants*

141.   The 2010 Plaintiffs bring this claim against the Vanderbilt Defendants.

142.   The 2010 Plaintiffs are authorized to bring these civil claims against the Vanderbilt Defendants pursuant to the civil remedies provision of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595.

143.     The Vanderbilt Defendants attempted to and did subject the 2010 Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

144.     The Vanderbilt Defendants attempted to and did subject the 2010 Plaintiffs to trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor, in violation of 18 U.S.C. § 1590.

145.     The Vanderbilt Defendants attempted to and did subject the 2010 Plaintiffs to unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592.

146.     The Vanderbilt Defendants attempted to and did unlawfully benefit financially from subjecting the 2010 Plaintiffs to peonage, slavery, and/or trafficking in persons in violation of 18 U.S.C. § 1593A.

147.     The Vanderbilt Defendants knowingly attempted to and did obtain the labor and services of the 2010 Plaintiffs using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce the 2010 Plaintiffs to believe that they would suffer serious harm if they were to leave the employ of the Vanderbilt Defendants in violation of 18 U.S.C. § 1589.

148.     The Vanderbilt Defendants' scheme to isolate the 2010 Plaintiffs, to coerce them to live in conditions causing psychological harm, and to limit their outside contacts, including unlawful discrimination in violation of 42 U.S.C. § 1981, was designed to convince the 2010 Plaintiffs that they would suffer serious harm if they were to leave the employ of the Vanderbilt Defendants.

149.     The Vanderbilt Defendants threatened the 2010 Plaintiffs with deportation in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589.

150.     The Vanderbilt Defendants knowingly recruited, transported, harbored, provided, and/or obtained the 2010 Plaintiffs so as to obtain their labor and services in violation of laws

prohibiting peonage, slavery, involuntary servitude, and forced labor within the meaning of the provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1590 (TVPA).

151.      As a proximate result of the conduct of the Vanderbilt Defendants, the 2010 Plaintiffs have suffered injuries to their persons, businesses, and property, and other damages.

152.      The 2010 Plaintiffs are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF
### THIRTEENTH AMENDMENT TO THE U.S. CONSTIUTION
*The 2010 Plaintiffs' claim against the Vanderbilt Defendants*

153.      The 2010 Plaintiffs bring this claim against the Vanderbilt Defendants.

154.      The Thirteen Amendment to the United States Constitution provides that, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

155.      By subjecting the 2010 Plaintiffs to involuntary servitude through the totality of the circumstances described herein, the Vanderbilt Defendants violated the 13th Amendment.

*156.*      The 2010 Plaintiffs are entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## THIRD CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT ("FLSA")
Minimum Wage, Overtime, and Retaliation
*The 2009 Plaintiffs' claim against Onesource Defendants and Larry Vanderbilt Sr.*
*The 2010 Plaintiffs' claim against the Vanderbilt Defendants*

157.      The above described actions of the Onesource Defendants violated the rights of the 2009 Plaintiffs under the Fair Labor Standards Act for which they are entitled to relief pursuant to 29 U.S.C. §216(b)

158.     The above described actions of the Vanderbilt Defendants violated the rights of the 2010 Plaintiffs under the Fair Labor Standards Act for which they are entitled to relief pursuant to 29 U.S.C. §216(b).

159.     Pursuant to 29 U.S.C. § 216(b), the Plaintiffs have consented in writing to be Plaintiffs in this FLSA action. Their written consents are attached to this Complaint as composite Exhibit 1.

160.     Defendants have violated the minimum wage, overtime, and record keeping provisions of the FLSA.  Defendants have failed to pay Plaintiffs their lawful minimum and overtime wages as required by the Fair Labor Standards Act by failing to record and pay for all hours worked, failing to pay the required minimum wages and overtime premiums as required by the FLSA and by making deductions or de facto deductions from their pay of the Plaintiffs that reduced their wages below the statutory minimum or that reduced their overtime premiums to less than one and one half their regular rate of pay.

161.     The violations of the FLSA set out above resulted, in part, from Defendants' unlawful  deductions from the wages of Plaintiffs including, *inter alia*, expenses for point-of-hire travel, visa, recruitment, tools, and housing expenses.  Further, the Defendants required, suffered, and/or permitted Plaintiffs to work hours "off the clock" without compensation as part of an intentional scheme to avoid the minimum wage and overtime provisions of the FLSA.

162.     By discharging and/or terminating Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna for filing a complaint or instituting or causing to be instituted a proceeding under or related to their rights under the FLSA, the Vanderbilt Defendants violated their rights under 29 U.S.C. § 215(a)(3).

163.    Defendants' actions in failing to compensate Plaintiffs in accordance with the provisions of the FLSA were not in good faith. Defendants' actions in failing to compensate Plaintiff in accordance with the provisions of the FLSA were willful such that a three year statute of limitations should apply

164.    As a consequence of Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid minimum and overtime wages, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF
### FRAUD
*The 2009 Plaintiffs' claim against the Onesource Defendants and Larry Vanderbilt Sr.*
*The 2010 Plaintiffs' claim against the Vanderbilt Defendants*

165.    As set forth in the preceding paragraphs, Defendants, individually and through their agents, employees, and/or representatives, knowingly made materially false and untrue statements and representations to Plaintiffs and the U.S. Government regarding the nature and terms and conditions of employment in the United States.

166.    Defendants intended that the false statements made by Defendants and/or their agents, employees, and/or representatives would induce Plaintiffs to leave their homes and jobs in Mexico and travel to the United States to work for Defendants.

167.    Plaintiffs were entitled to rely on Defendants' representations.

168.    In reliance or reasonable reliance on Defendants' false and/or negligent representations employment opportunities, Plaintiffs paid significant sums of money to Defendants and/or their agents, employees and/or representatives.

169.    In reliance or reasonable reliance on Defendants' false representations regarding employment opportunities, Plaintiffs left their homes and jobs in Mexico and traveled to the United States to work for Defendants.

170.     As a direct and proximate result of Defendants' knowing, willing, intentional, and/or negligent actions, Plaintiffs have been injured.

171.     Plaintiffs are entitled to recover compensatory and punitive damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
BREACH OF CONTRACT
*The 2009 Plaintiffs' claim against the Onesource Defendants*
*The 2010 Plaintiffs' claim against Vanderbilt Landscaping LLC*

172.     As set forth in the preceding paragraphs, the Onesource Defendants and Vanderbilt Landscaping LLC individually and through their agents, employees and/or representatives, contracted with Plaintiffs for specific work opportunities in compliance with U.S. Law in the United States with Defendants.

173.     The Onesource Defendants and Vanderbilt Landscaping LLC breached their contracts with Plaintiffs by failing to comply with the requirements of their H-2B contracts including the requirement to comply with other U.S. laws protecting the rights of employees.

174.     In reliance on these agreements, Plaintiffs paid significant sums of money and entered into substantial debts, surrendered other employment opportunities, and incurred other financial losses.

175.     As a direct result of breach by the Onesource Defendants and Vanderbilt Landscaping LLC, Plaintiffs have suffered damages.

176.     Plaintiffs are entitled to recover compensatory damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866
### 42 U.S.C. § 1981
*The 2009 Plaintiffs' claim against the Onesource Defendants and Larry Vanderbilt Sr.*
*The 2010 Plaintiffs' claim against the Vanderbilt Defendants*

177.     The 2009 Plaintiffs assert this claim pursuant to 42 U.S.C. § 1981 for injunctive relief, declaratory relief, and damages against the Onesource Defendants and Defendant Larry Vanderbilt Sr.

178.     The 2010 Plaintiffs assert this claim pursuant to 42 U.S.C. § 1981 for injunctive relief, declaratory relief, and damages against the Vanderbilt Defendants.

179.     The actions of the Onesource Defendants as set forth herein, violated the 2009 Plaintiffs' rights to receive full and equal benefit of all laws as guaranteed by 42 U.S.C. § 1981, including Plaintiffs' rights to enjoy and benefit from non-discriminatory employment relationships with Defendants.

180.     The actions of the Vanderbilt Defendants as set forth herein, violated the 2010 Plaintiffs' rights to receive full and equal benefit of all laws as guaranteed by 42 U.S.C. § 1981, including Plaintiffs' rights to enjoy and benefit from non-discriminatory employment relationships with Defendants.

181.     The Onesource Defendants and Defendant Larry Vanderbilt Sr. subjected the 2009 Plaintiffs to discriminatory and offensive mandatory room and board arrangements at labor camps where it required the 2009 Plaintiffs to reside as a condition of employment.

182.     The Onesource Defendants and Defendant Larry Vanderbilt Sr. also engaged in threats of deportation and abusive behavior constituting an abusive work environment on account of race, ethnicity, and/or alienage.

183.     The Vanderbilt Defendants subjected the 2010 Plaintiffs to discriminatory and offensive mandatory room and board arrangements at labor camps where it required the 2010 Plaintiffs to reside.

184.     The Vanderbilt Defendants also engaged in threats of deportation and abusive behavior constituting an abusive work environment on account of race, ethnicity, and/or alienage.

185.     Defendants did not subject their non-Hispanic and/or U.S. citizen employees to the same or similar room and board arrangements or threats of deportation and abusive behavior.

186.     The Vanderbilt Defendants retaliatory conduct – interrogating, threatening, and discharging and/or terminating Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna for opposing Defendants' discriminatory deprivation of their rights to enjoy the same contract-based rights enjoyed by other employees of Defendants, violated their rights under 42 U.S.C. § 1981.

187.     Defendants knowingly, willfully, maliciously, intentionally, and without justification acted to deprive Plaintiffs of their rights.

188.     As a result of Defendants' unlawful acts, Plaintiffs have suffered injury to their property and/or persons.

189.     Plaintiffs seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

TENNESSEE WHISTLEBLOWER STATUTE (Tenn. Code Ann. § 50-1-304)
*Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna claim against Vanderbilt Landscaping LLC*

190.     In retaliation for publicly working collectively to defend their own rights and the rights of other workers, Vanderbilt Landscaping LLC knowingly created reasonably and objectively intolerable working condition for Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna with the intention of forcing them to further coerce the remaining 2010 H-2B workers to continue working under conditions of forced labor and trafficking without complaint or action to change the conditions.

191.     Vanderbilt Landscaping LLC attempted and/or did constructively discharge or terminate Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna solely for refusing to remain silent about, Defendants' activities in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare including for working collectively to defend their own rights and the rights of other workers.

192.     As a result of Defendant Vanderbilt Landscaping LLC's unlawful acts, Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna have suffered injury to their property and/or persons.

193.     Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY
*Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna claim against Vanderbilt Landscaping LLC*

194.     Vanderbilt Landscaping LLC employed Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna as guestworkers pursuant to H-2B contracts.

195.     In retaliation for publicly working collectively to defend their own rights and the rights of other workers, Vanderbilt Landscaping LLC knowingly created reasonably and objectively intolerable working condition for Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna with the intention of forcing them to further coerce the remaining 2010 H-2B workers to continue working under conditions of forced labor and trafficking without complaint or action to change the conditions.

196.     Vanderbilt Landscaping LLC attempted and/or did constructively discharge or terminate Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna because they attempted to and did exercise their statutory and/or constitutional rights including for working collectively to defend their own rights and the rights of other workers.

197.     As a result of Defendant Vanderbilt Landscaping LLC's unlawful acts, Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna have suffered injury to their property and/or persons.

198.     Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

Case 3:11-cv-00276   Document 10   Filed 04/06/11   Page 33 of 37 PageID #: 113

### NINTH CLAIM FOR RELIEF
VIOLATIONS OF THE KLU KLUX KLAN ACT OF 1871
(42 U.S.C. § 1985) (Thirteenth Amendment and Constitutional Right to Travel)
*Plaintiffs Hilario Razura Jimenez, Jose Manuel Guerrero Gomez, and J. Refugio Castellon Luna claim against the Vanderbilt Defendants*

199.     Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna assert this claim pursuant to 42 U.S.C. § 1985(3) for injunctive relief, declaratory relief, and damages from Defendant Vanderbilt Defendants Landscaping LLC.

200.     The Vanderbilt Defendants, their principals, employees, and agents, conspired, agreed, planned, and coordinated for the purpose of depriving Plaintiffs Razura Jiménez, Guerrero Gomez and Castellon Luna equal protection of their rights under the Thirteenth Amendment to the United States Constitution and its implementing and enforcing statutes (interalia 18 U.S.C. §§ 1589, 1590) to be free from forced labor and trafficking in persons and to exercise their Constitutional right to travel.

201.     The Vanderbilt Defendants, their principals, employees, and agents acted in furtherance of their conspiracy for the purpose of depriving Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of equal protection of their rights under the Thirteenth Amendment to the United States Constitution and its implementing and enforcing statutes (interalia 18 U.S.C. §§ 1589, 1590) to be free from trafficking in persons and to exercise their Constitutional right to travel.

202.     The Vanderbilt Defendants, their principals, employees, and agents were motivated by racial, anti-Hispanic, and/or anti-immigrant animus when they conspired to deprive the Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights and/or acted in furtherance of a conspiracy to deprive Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights.

203.     The Vanderbilt Defendants knowingly, willfully, maliciously, intentionally, and without justification planned and acted to deprive Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna of their rights.

204.     As a result of the Vanderbilt Defendants' unlawful acts, Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna have suffered injury.

205.     The Plaintiffs Razura Jiménez, Guerrero Gomez, and Castellon Luna seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
*Plaintiff Jose Manuel Guerrero Gomez claims against the Vanderbilt Defendants*

206.     Plaintiff Guerrero Gomez brings this claim for damages resulting from their false imprisonment by Defendant Vanderbilt Defendants Landscaping LLC.

207.     The Vanderbilt Defendants acted to unlawfully and unreasonably detain the Plaintiff Guerrero Gomez against his will and consent during a retaliatory private deportation.

208.     The Vanderbilt Defendantsacted with malice, gross negligence, and/or reckless disregard.

209.     Plaintiff Guerrero Gomez suffered injury as a result of the Vanderbilt Defendants' actions.

210.     The Vanderbilt Defendants are liable to Plaintiff Guerrero Gomez for damages, including compensatory and punitive damages.

## ELEVENTH CLAIM FOR RELIEF
### OUTRAGEOUS CONDUCT
*Plaintiff Jose Manuel Guerrero Gomez claims against the Vanderbilt Defendants*

211.     Plaintiff Guerrero Gomez brings this claim for damages resulting from their outrageous conduct by the Vanderbilt Defendants.

212.     The Vanderbilt Defendantsacted to intentionally or recklessly inflict severe emotional distress by means of extreme or outrageous conduct—inflicting a retaliatory, private deportation.

213.     Plaintiff Guerrero Gomez suffered injury as a result of the Vanderbilt Defendants'actions.

214.     The Vanderbilt Defendants are liable to Plaintiff Guerrero Gomez for damages, including compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that a jury be impaneled to hear this cause and that, upon trial of this action, this Court enter an order:

a.     Declaring that Defendants willfully violated the minimum wage and overtime provisions of the FLSA as set forth herein;

b.     Awarding declaratory relief;

c.     Awarding compensatory damages;

d.     Awarding punitive damages;

e.     Awarding damages in the amount of Plaintiffs unpaid wages, and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), and/or prejudgment interest;

f.     Awarding Plaintiffs their attorneys fees;

g.     Awarding Plaintiffs the costs and expenses incurred in pursuing this action; and,

h.     Granting such further relief as is just and equitable.

Filed this 6 day of April 2011

s/ Charles P. Yezbak, III
Charles P. Yezbak, III (BPR #018965)
Robert C. Caldwell (BPR #29084)
**Yezbak Law Offices**
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 250-200
(615) 250-2020 Facsimile
Yezbak@yezbaklaw.com
ccaldwell@yezbaklaw.com

Jennifer J. Rosenbaum
LSBA No. 31946
*Admitted to practice in the U.S. Dist. Ct., M.D. of Tenn.*
**New Orleans Workers' Center**
**For Racial Justice**
217 N. Prieur St.
New Orleans, LA 70112
(504) 309-5165
jjrosenbaum@nowcrj.org

Edward Tuddenham
Texas Bar No. 20282300, *Pro Hac Vice Admission Anticipated*
1339 Kalmia Rd. NW
Washington DC 20012
(202) 249-9499
etudden@io.com