**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HILARIO RAZURA JIMENEZ, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 3:11-0276** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VANDERBILT LANDSCAPING, LLC, et al.,** | ) | **Chief Judge Campbell** |
| | ) | **Magistrate Judge Knowles** |
| | ) | |
| **Defendants.** | ) | |

### REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS BY LARRY VANDERBILT SR. AND JOFFREY VANDERBILT

Plaintiff workers offer this reply to clarify misstatements of law in Defendant's Opposition to Plaintiffs' migrant workers' Motion to Dismiss. (Mem. in Opp. to Pls.' Mot. to Dismiss ("Opposition")) (Doc. 44) (filed July 1, 2011). Defendants' overstated rhetoric and misstatements of law fail to establish well-plead claims that survive scrutiny under Fed. R. Civ. P. 12(b)(6) and the First Amendment.

For the reasons herein and those previously briefed in Plaintiffs' Brief in Support of Plaintiffs' Motion to Dismiss Counterclaims Counterclaims by Larry Vanderbilt Sr. and Joffrey Vanderbilt ("Mot. to Dismiss") (Doc. 37) (filed May 31, 2011), this Court should dismiss Defendants' counterclaims. Indigent migrant workers attempting in good faith to vindicate their fundamental workplace rights should not be forced to litigate retaliatory counterclaims that deter and punish their attempt to vindicate the claims raised in this lawsuit. Rather than defending the underlying workplace claims in this litigation, Defendants have counterclaimed against Plaintiff for constitutionally protected actions related to Plaintiffs legitimate claims for redress.

# I. DEFENDANTS' COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6).

## A. DEFENDANTS' DEFAMATION CLAIMS ARE BARRED BY A SIX MONTH STATUTE OF LIMITATIONS.

### 1. Defendants Misstate the Standard for Libel.

Defendants' Response misstates the standards for libel and slander in an area where the law is established. Libel and slander are both types of defamation, however they are distinguished by the mode of transmission. Libel involves written defamation while slander involves spoken defamation. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).

Defendants claim that whether the communications at issue constitute libel or slander hinges on questions of law and that "the distinction between speaking and writing is not necessarily dispositive of the line of demarcation between slander and libel." (Opposition at 9). As authority, Defendants cite *Ali v. Moore*, 984 S.W.2d 224, 227 (Tenn. Ct. App. 1998) for the proposition that that broadcast of defamatory statements through mass media is libel. However, the legal question in *Ali v. Moore* was whether a television news broadcast, particularly when recited from a script, should be considered libel or slander.[1] The case only addressed whether a television broadcast company may be held liable for libel for things that *they* report during their news broadcast. The case did not address the facts Defendants' appear to be alleging in their counterclaims – whether statements made during the course of an interview with a reporter or

---

[1] "No reported case in Tennessee has directly addressed whether a television broadcast should be designated as libel or slander. There is no clear consensus among our sister states concerning this issue. The 'most prevalent' view, however, is that broadcasts should be considered as libel; particularly if they are based on written scripts. In the instant case, it would appear that the broadcast be classified as libel; particularly since it was based on a prepared script." *Ali v. Moore*, 984 S.W.2d 224, 227 (Tenn. Ct. App. 1998) (citations omitted).

reported from the Complaint and <u>then</u> used in an edited article by a reporter or other third party could be characterized as libel.

Defendants then cite the Second Restatement of Torts for the proposition that "[a] publication of libel may be made by an oral communication that is intended to be, and is reduced to writing." Restatement (Second) of Torts § 568 (1977); *See* (Opposition at 9). However, the Restatement continues "[t]hus one who dictates to a stenographer a letter that defames a third person may become liable for libel on the basis of the oral communication when the stenographer takes it down. . . . [t]he same is true when a message is telephoned to a telegraph office where it is reduced to writing, or when a statement is given orally to a newspaper reporter and is published in the paper." *Id*. Although the Restatement includes statements to newspaper reporters, the examples indicate that only verbatim statements could be held liable for libel. According to the Restatement, the distinguishing characteristic for oral communication to be held to libel rather than slander is that the oral communication be "the intended and actual embodiment in permanent form." *Id.* The Eastern District of Tennessee has specifically declined to rule that defamatory words spoken to a reporter constitute libel,[2] as has the Northern District of Georgia. *Quality Tech. Co. v. Stone & Webster Eng'g Co.*, 745 F. Supp. 1331, 1352 (E.D. Tenn. 1989); *Hoffman-Pugh v. Ramsey*, 193 F.Supp.2d 1295 (N.D. Ga. 2002) (holding that Plaintiff's claims for slander based on statements in a book and in the media were barred by the

---

[2] "QTC argues for the application of section 568, comment (f) of the *Restatement (Second) of Torts* which provides that defamatory words spoken to a newspaper reporter and later published constitutes libel . . . .The Court is reluctant to apply this rationale in this case where the plaintiff's claim arises under Tennessee law, absent clear authority in the Tennessee courts for such a construction Pursuant to T.C.A. § 28-3-103 and *Heller*, application of the six months limitations period would appear to bar QTC's claim of trade disparagement-slander." *Quality Tech. Co. v. Stone & Webster Eng'g Co.*, 745 F. Supp. 1331, 1352 (E.D. Tenn 1989).

statue of limitations or abandoned because the complaint did not identify specific offending spoken statements and relied only upon statements in the book.).

>    **2.**     **Defendants' Defamation Claims Are Subject to a Six Month Statute of Limitations.**

Because Defendants' counterclaims refers to alleged defamatory statements that constitute alleged slander, the Defendants' defamation claims are time-barred.  Actions for slander must "be commenced within six (6) months after the words are uttered," Tenn. Code Ann. § 28-3-103 (1980), while actions for libel must be commenced within one (1) year. Tenn. Code Ann. § 28-3-104 (1980).  Defendants do not deny that only one publication cited in the counterclaim falls within the six month statute of limitations.  (Answer to Plaintiffs' First Amended Complaint ("Answer") at 36-37) (Doc. 15) (filed April 20, 0211); (Opposition at 9). This single remaining publication contains no direct quotes; it only reiterates the allegations contained in the Complaint.[3]  (*Jimenez et al. v. Vanderbilt Landscaping LLC. et al.*, First Amended Complaint ("Complaint"), Civ. Action No. 3:11-0276, (M.D. Tenn.) (Doc. 10) (filed April 6, 2011).  As part of the Complaint, these allegations are privileged and, therefore, the Defendants' claims on defamations should be dismissed.

---

[3] The article lays out facts and then makes clear that it relates to *claims* of forced labor, surveillance, and other claims of civil rights violations.  For example, the article states "Razura Jiménez and those supporting him would go on to *claim* Vanderbilt Landscaping (which is not affiliated with the Nashville university) conducted forced labor, surveillance and threats, maintained poor living conditions for workers and even engaged in human trafficking. Two weeks ago, Razura Jiménez and 14 other Mexican guestworkers filed suit in U.S. District Court for the Middle District of Tennessee against Vanderbilt Landscaping and its principals, Larry Vanderbilt Sr. and Joffrey Vanderbilt. They allege various abuses and violations of civil rights," and "Workers *claim in the suit* that when they arrived in the country under H-2B work visas, Larry Vanderbilt Sr. confiscated those visas and their passports, which company officials allegedly threatened to burn if the workers didn't comply with certain rules." James Nix, *Mexican Guest Workers Sue Local Landscaping Company, Allege Abuse of Federal H-2B Program*, NASHVILLE CITY PAPER, April 3, 2011, at http://nashvillecitypaper.com/content/city-news/mexican-guest-workers-sue-local-landscaping-company-allege-abuse-federal-h-2b-prog (emphasis added). *See* Mot. to Dismiss, exhibit 5.

### 3. Defendants are Subject to an Actual Malice Standard.

Defendants argue that they should not be held to an actual malice standard to prevail on defamation claims because 1) Plaintiffs were not involved in a labor dispute with Vanderbilt and 2) Vanderbilt and its owners are private figures. (Opposition at 12). However, as set forth below, the allegations of Defendants' counterclaim show that Defendants are properly held to an actual malice standard because 1) the parties were involved in a labor dispute, 2) Defendants are limited purpose public figures, and 3) the allegedly defamatory speech involves issues of public concern, all factors to which the Supreme Court has afforded greater First Amendment protections. *See* (Mot. to Dismiss at 17-18). While Defendants do not have to show clear and convincing *evidence* of actual malice at the motion to dismiss stage, they are required to plead to an actual malice standard and have failed to allege any facts of actual malice beyond mere conclusory statements.

### a. Plaintiffs are Involved in a Labor Dispute with Defendants.

Defendants assert that they should not be held to an actual malice standard because no labor dispute existed. However they state no facts to support their characterization that no labor dispute existed, except to indicate their view that "legitimate labor disputes" involve union organizing efforts. Under U.S. statutory law, even if the Court were to accept the Defendants' version of the facts, the parties were involved in a labor dispute because Plaintiffs were contesting the terms and conditions of employment. *See* (Compl. at ¶¶ 7, 72-93, 160-162).

U.S. labor law generally recognizes that labor disputes can take place between employers and unionized employees *or* employees outside of unions. The Norris-La Guardia Act defines a "labor dispute" as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining,

changing, or seeking to arrange terms or conditions of employment . . . ." 29 U.S.C. § 113(c).

The Supreme Court has noted that courts have defined the term "labor dispute" broadly. *Order of Railroad Telegraphers v. Chicago & N.W. Ry.*, 362 U.S. 330, 335-336 (1960);[4] *Bhd of R.R. Carmen of Am., Local No. 429 v. Chicago & N.W. Ry. Co.*, 354 F.2d 786, 801 fn. 4 (8th Cir. 1965); *Bowater S. S. Co. v. Patterson*, 303 F.2d 369, 372 (2d Cir. 1962); *Corporate Printing Co., v. New York Typographical Union No. 6, Int'l Typographical Union*, 555 F.2d 18, 20 (2d Cir. 1977). Under this definition, the parties were clearly involved in a labor dispute. Plaintiffs attempted to defend their rights to be free from involuntary servitude and forced labor, the right to minimum wage, the right to be free from discrimination, and to improve their conditions, among other rights, by cooperating with government agencies and were retaliated against. *See* (Compl. at ¶¶ 7, 72-93, 160-162).

### b.      Defendants are a Limited Public Figures.

Defendants are properly categorized as limited public figures because they received large amounts of public funds and, as such, the public has an interest in their conduct. Defendants are not private figures as they claim. (Opposition at 12). From at least 2009, Defendant Vanderbilt Landscaping LLC received public contracts in excess of $2 million dollars with the Tennessee Department of Transportation. (Complaint at ¶ 23). Additionally, Defendant Vanderbilt Landscaping LLC received a $900,000 loan guarantee under the American Recovery and Reinvestment Act (the "stimulus" act). (Complaint at ¶ 22). As public figures, Defendants should be held to an actual malice standard. (Mot. to Dismiss at 17).

---

[4] Writing about the definition of a labor dispute, Justice Black wrote "Congress made the definition broad because it wanted it to be broad. There are few pieces of legislation where the congressional hearings, committee reports, and the language in the legislation itself more clearly point to the necessity for giving an Act a construction that will protect the congressional policy the Act adopted." *Order of R.R. Telegraphers v. Chicago & N. W. R. Co.*, 362 U.S. 330, 335 (1960).

### c. The Allegedly Defamatory Speech Involved an Issue of Public Concern.

Plaintiffs' claims – dealing with forced labor and trafficking violations allegedly committed by a public contractor who received a loan guarantee under the stimulus act and who hired guestworkers based on a certification submitted to the Department of Labor that no American workers could be found – are matters of public concern. These claims raise issues involved in immigration, labor standards, human rights, and economic recovery debates. As such, they receive greater protection under the First Amendment. *See Snyder v. Phelps*, 131 S. Ct. 1207 (2011).

For the foregoing reasons, Defendants are correctly held to an actual malice standard. While Defendants do not have to show clear and convincing *evidence* of actual malice at the motion to dismiss stage, they are required to plead to an actual malice standard and have failed to allege any facts of actual malice beyond conclusory statements.

### 4. Defendants have not Pled a *Prima Facie* Case of Defamation.

Even if all factual allegations are regarded as true, Defendants have not pled a *prima facie* case for defamation. To establish a *prima facie* case, Defendants are required to plead that Plaintiffs published a statement either "with the knowledge that the statement is false and defaming to the other" or "with reckless disregard for the truth of the statement or with negligence of failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). Defendants have cited no specific alleged defamatory language. *See* (Answer at ¶¶48-50). The one article falling within the statute of limitations contains no direct quotes from Plaintiffs and hints only at statements of opinion and allegations filed in a criminal complaint, which are privileged. *See supra* at fn. 3; (Mot. to Dismiss at 16-17). A matter contained in a pleading is clearly privileged. Though not entirely transparent,

Defendants' claim seems to be that by talking to the media about their legal claims, Plaintiffs defamed them. *See* (Answer at ¶¶50-52). Because Defendants have not pled a *prima facie* case for defamation, their counterclaims should be dismissed.

### B. DEFENDANTS FAIL TO STATE A CLAIM FOR FALSE LIGHT/INVASION OF PRIVACY (Count 2).

Claims for oral "false light/invasion of privacy" are subject to the same six month statute of limitations that applies to defamation. Tenn. Code Ann. 28-3-103 (2003); (Mot. to Dismiss at 18). As such, Defendants' claims for false light/invasion of privacy should be dismissed.

### C. DEFENDANTS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (Count 3).

A cause of action for tortious and/or intentional interference with business relations requires alleging five elements. *See* (Mot. to Dismiss at 18-19). Defendants fail to plead sufficient facts to support this claim, at a minimum, by failing to sufficiently plead elements 2) the workers' knowledge of the specific business relationship and not mere awareness of Vanderbilt's business dealings in general and 4) improper motive or improper means. *See Trau-Med of America, Inc. v. Allstate Insurance Company*, 71 S.W.3d 691, 701 (Tenn. 2002).

As the Defendants admit, it is not sufficient to plead simply that a defendant wanted to cause a breach or termination of a business relationship to establish improper motive; rather the Defendants must show that Plaintiffs' "*predominant* purpose was to injure [Vanderbilt]." *Id.* at 701, fn 5. Furthermore, "allegations of mere 'malice' are not sufficient to state a claim for tortious interference . . . ." *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 641 (M.D. Tenn. 2006). Plaintiffs' purpose in bringing the instant case was to vindicate their labor, civil, and human rights; not to injure Vanderbilt. While misrepresentation and fraud are included in examples of illegal or independently tortious "improper means" as the

Defendants note, Defendants have not independently pled deceit or misrepresentation with specificity and their claims for defamation are barred by the statute of limitations. *See* (Answer at ¶¶ 14-15). Defendants have not adequately pled improper motive or improper means.

Defendants also have not adequately pled the knowledge element. Defendants have not alleged that Plaintiffs, whose work involved removing litter from highways and other landscaping work, not seeking out new business, had any specific knowledge of prospective business relations with Metro Nashville.

Furthermore, Defendants do not claim that Plaintiffs directly interfered with their business relations. Rather, their implied argument is that by filing a case and talking to the media, Plaintiffs indirectly interfered with their business relations. Plaintiffs filing of the lawsuit and attendant press coverage cannot constitute tortious interference with business relations or the tort could potentially prevent anyone from filing lawsuits against businesses for fear of indirectly interfering with business relations and being slapped with a lawsuit. The Tennessee Supreme Court has repeatedly expressed concern that an over-broad interpretation of the tort would undermine free-market competition and initially declined to recognize the tort of interference in business relations. *Nelson v. Martin*, 958 S.W.2d 643 (Tenn. 1997); *Trau-Med of America v. Allstate Ins. Co.*, 71 S.W.3d 691, 700 (Tenn. 2002); *Watson's Carpet and Floor Coverings v. McCormick*, 247 S.W.3d 169, 177-178 (Tenn. Ct. App., 2007). Although the Court subsequently recognized the tort in 2002, the Court explicitly recognized that in interpreting this tort, it was necessary to look to underlying tort liability principles. Even while over-ruling *Nelson*, the *Trau-Med* court noted the potential negative effects that the tort could have on free competition and that the parameters of the tort should be interpreted with attention to preserving free competition. *Watson's Carpet*, 247 S.W.3d 169 at 177-178; *Trau-Med*, 71 S.W.3d 691 at 700.

The Court also recognized that it would be contrary to public policy to allow *prospective* economic relationships to stand on the same legal footing as contractual relationships for tort liability. *Watson's Carpet,* 247 S.W.3d 169 at 177, citing *Trau-Med.*, 71 S.W.3d at 700. Adopting the Defendants' over-broad reading of the tort to extend to allegedly indirect interference by filing a complaint would chill business competition. The Court should read the tort in the narrow manner that it was intended to apply – to *improper* interference – and Defendants' claims for tortious interference with business relations should be dismissed.

### D. DEFENDANTS FAIL TO STATE A CLAIM FOR PROCUREMENT OF BREACH OF CONTRACT (Count 4).

Defendants fail to state a claim for procurement of breach of contract. Unlike tortious interference with business relations, procurement of breach of contract does not apply to *prospective* contracts; it only applies to existing contracts. Defendants have not claimed that a contract existed with Nashville Metro. *See* (Answer at ¶88) ("Counter-Defendants acted maliciously in inducing the breach by Metropolitan Government of Nashville of its *expected* agreement with Counter-Plaintiffs") (emphasis added).

Defendants also misstate the law by indirectly indicating that they had an implied contract with Metro Nashville. *See* (Opposition at 17). An implied contract is not a prospective contract; an implied contract is "not a true contract, but is an equitable substitute for contract." It is "a judicially imposed obligation, not a true agreement, because it can be unjust and inequitable for a person to receive a benefit in the form of goods or services without providing the other party with fair compensation." 21 TENN. PRAC. CONTRACT LAW AND PRACTICE § 1:10 (2010). Vanderbilt does not allege that they performed any services for Metro Nashville, so therefore, they could not have an implied contract. Additionally, as an experienced public contractor, Vanderbilt should be well aware that Metro Nashville has a regulated bidding process to award

contracts.  *See generally* The 1992 Procurement Code of the Metropolitan Government (Title IV of Metro Nashville Code of Ordinances).[5]  Defendants' claim for procurement of breach of contract should be dismissed.

### E.   DEFENDANTS FAIL TO STATE A CLAIM FOR INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS (Count 5).

In order to claim intentional or reckless infliction of emotional distress, Defendants must plead not only that the conduct was outrageous and intentional or reckless, but also that they suffered physical or serious mental injury.  (Mot. to Dismiss at 22).  Defendants do not allege their physical or emotional injuries beyond their conclusory statement that the articles "resulted in serious mental injuries."  (Opposition at 42).  If the individual Defendants were emotionally distressed, they would be in possession of this information and should be able to plead it.  These fats are not dependent upon discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 1964-65 (2007), states that the claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . . ." *Id.* quoting *Conley v. Gibson*, 78 S.Ct. 99, 102 (1957).  Defendants have failed to meet this standard.

### F.   DEFENDANTS FAIL TO STATE A CLAIM FOR ABUSE OF PROCESS (Count 6), CIVIL CONSPIRACY (Count 7), AND CONCERT OF ACTION (Count 8).

A claim for abuse of process must allege both the existence of an ulterior motive <u>and</u> an act in the use of process other than such as would be proper in the regular prosecution of the charge.  Defendants claim that investigations by government agencies disprove the Plaintiffs' claims.  These findings do not definitively prove the Plaintiffs' claims, but they also do not disprove them as Defendants suggest.  Instead, the agencies found numerous and serious housing

---

[5] Which can be found at:
http://library.municode.com/index.aspx?clientID=14214&stateID=42&statename=Tennessee

and safety violations, wage violations, and violations of the H-2B program regulations. While these findings of violations also do not, on their own, prove the Plaintiffs' claims of trafficking, forced labor, passport confiscation, and surveillance, among others, the violations are indicative of a pattern of problems that, combined with other factors that will be proven during the instant case, arise to the level of trafficking and forced labor. Plaintiffs have not misused or misapplied the process and Defendants have alleged no misuse of process.

To reiterate the standards for civil conspiracy explained in the Mot. to Dismiss at 25, a claim for civil conspiracy requires an unlawful purpose or unlawful means and a resulting injury. Claims for civil conspiracy must be pled with some degree of specificity. *See Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006); (Mot. to Dismiss at 25). Defendants have failed to state the common design, unlawful purpose, or injury. Furthermore, their conclusory assertions that Plaintiffs committed civil conspiracy are wholly dependent upon their other tort claims, which have been inadequately pled.

A tort for concert of action holds two or more person that engage in an unlawful act equally liable for civil injury to a third party. A cause of action for concert of action requires allegations that a person (1) does a tortious act in concert with another or pursuant to a common design; (2) knows that the other's conduct constitutes a breach of duty and nevertheless gave substantial assistance or encouragement; or, (3) gave substantial assistance to the other in accomplishing the tortious act and the person's own conduct also separately constituted a breach of duty to the third party. *Bryant v. McCord*, 01A01-9801-CV-00046, 1999 WL 10085 (Tenn. Ct. App. Jan. 12, 1999), *quoting* Restatement (Second) of Torts § 876(c). Defendants have not adequately pled a breach of duty, identified a common design, or identified the substantial

assistance that plaintiffs gave each other. Therefore, Defendants have failed to plead that Plaintiffs committed a concert of action and the claim should be dismissed.

### G.     DEFENDANTS FAIL TO STATE A CLAIM FOR PUNITIVE DAMAGES.

In their Opposition Memorandum, Defendants still fail to recognize that damages and "punitive damages" are remedies, not independent causes of action. *Jackson v. Falcon Transp. Co.*, 2011 U.S. Dist. LEXIS 46369 (M.D. Tenn. Apr. 29, 2011). *See* (Opposition at 22-23; Mot. to Dismiss at 26). The Defendants have failed to state a claim for punitive damages because there is none and their claim should be dismissed as an independent cause of action.

## II.    THE TENNESSEE ANTI-SLAPP ACT COVERS PLAINTIFFS' COMMUNICATIONS.

Defendants claim that the Anti-SLAPP Act and the FLSA's anti-retaliatory provision should not apply because Defendants' actions were not retaliatory, that Plaintiffs knew that their accusations of crimes were false when they made them, and that Plaintiffs' allegations were disproved by Tennessee OSHA, Tennessee Department of Transportation, the Federal Department of Labor, and the FBI. (Counterclaim at ¶¶ 55-56; Opposition at 3 and 5). However, the State and Federal agencies' findings do not disprove the Plaintiffs' claims; in fact they vindicate certain claims that were properly before the agencies. Other claims are the matter currently being litigated in the present case. Plaintiffs reiterate that the DOL barred Vanderbilt from participation in temporary guestworker programs because of the seriousness of their violations. Plaintiffs are confident that they will show in court that Defendants' egregious treatment amounted to trafficking, forced labor, fraud, and other violations of Plaintiffs' rights.

Defendants claim that the Anti-SLAPP Act covers statements to a government but not cover informing media organizations. While Defendants' literal reading of the law is correct, their limited interpretation cannot be correct. *See* Tenn. Code Ann. § 4-21-1002 (1997). The Anti-SLAPP Act is designed to "provide protection for individuals who make good faith reports of wrongdoing to appropriate governmental bodies" from the "threat of civil action for damages in the form of a 'strategic lawsuit against political participation' (SLAPP) and the possibility of considerable legal costs [that] can act as a deterrent to citizens. . . effectively punish[ing] concerned citizens for exercising the constitutional right to speak and petition the government for redress of grievances." *Id.* When individuals communicate information to a governmental entity on a politically hot issue of public concern, that complaint is bound to receive media attention, as the Complaint did in this case. The Anti-SLAPP Act was designed to protect individuals who make good faith reports of wrongdoing to governmental bodies and therefore must cover reports to the media when they concern the very claims at issue in the petition to the government. The claims at issue are the very same in both instances. If the Anti-SLAPP Act is not read to protect workers who inform the media of the very claims at issue in the case, then it is unclear what purpose the Anti-SLAPP Act serves.

Accordingly, Defendants' counterclaims constitute unlawful retaliation under both the Anti-SLAPP Act and FLSA's anti-retaliation provision and should be dismissed.

## III. DISMISSING THE COUNTERCLAIMS IS NECESSARY TO PROTECT PLAINTIFF MIGRANT WORKERS' FIRST AMENDMENT RIGHTS FROM UNLAWFUL RETALIATION.

Defendants' baseless claims are retaliatory and should be dismissed to protect Plaintiffs' First Amendment rights. Vanderbilt argues that Plaintiffs cite only the six-month delay to argue that Vanderbilt's action was retaliatory. However, the Sixth Circuit has clarified that "in certain

cases, temporal proximity alone may be sufficient to establish the causation element." *Clark v. Hoops, LP,* 709 F. Supp. 2d 657, 667 (W.D. Tenn. 2010).

In the instant case, the allegedly defamatory articles cited were published between August 12, 2010 and September 8, 2010 and on April 4, 2011.  Plaintiffs filed their Complaint on March 24, 2011.  Defendants filed their counterclaims in their Answer on April 20, 2011.  By that time, more than eight months had passed since the first allegedly defamatory articles were published.  It was only after the Plaintiffs filed a Complaint that Defendants decided that the Plaintiffs' actions were allegedly defamatory.

The First Amendment provides strong protections for the right to petition the government for redress, particularly on matters of public concern such as the civil, labor, and human rights of employees working for a publicly contracted firm.  U.S. CONST. Amend. I. Plaintiffs move to dismiss Defendants' counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Defendants are attempting to "chill" Plaintiffs' speech and petition rights by filing frivolous counterclaims that raise legal costs and effectively punish them for exercising their rights.

The Court has recognized that these rights rest at the very heart of democracy. Protecting this right "to speak one's mind is not only an aspect of individual liberty – and thus a good unto itself – but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine v. Falwell*, 485 U.S. 46, 51 (1988) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 45, 503-04 (1984)).  This Constitutional right "was fashioned to assure unfettered interchange of ideas for bringing about political and social changes desired by the people."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

The Supreme Court also recognizes that the First Amendment rights may conflict with States desire to protect its citizens from defamation and other common law torts. Over the last half-century, the Court has developed doctrines to strike the correct balance between these two bodies of rights, repeatedly extending protections and choosing to err on the side of First Amendment rights. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (public officials can only recover on a defamation falsehood if the statement was made with actual malice); *Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967) (extending the *New York Times* standard to public figures); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (distinguishing between matters of public concern and private concern); and *Snyder v. Phelps*, 131 S. Ct. 1207 (2011) (speech that deals with matters of public concern are entitled to special protection under the First Amendment). Speech relating to public officials or public figures or to matters of public concern are given special protections under the First Amendment. Speech dealing with matters of public concern when it relates to any "matter of political, social, or other concern to the community" or "is a subject of legitimate news interest; that is, a subject of general interest of value and concern to the public." *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011), citing *Connick v. Myers*, 103 S. Ct. 1684, 1690 (1983) and *City of San Diego, Cal. v. Roe*, 125 S. Ct. 521, 526 (2004).

Plaintiffs' claims – dealing with forced labor and trafficking violations allegedly committed by a public contractor who received a loan guarantee under the stimulus act who hired guestworkers based on a certification submitted to the Department of Labor that no American workers could be found – are matters of public concern. These claims raise issues involved in immigration, labor standards, human rights, and economic recovery debates. As such, Plaintiffs' rights to speech and petition are strongly protected under the First Amendment

and Defendants' frivolous counterclaims should be dismissed in order to protect Plaintiffs' First Amendment Rights.

## CONCLUSION

For the foregoing reasons and those discussed in the Brief in Support of Plaintiffs' Motion to Dismiss Counterclaims, the counterclaims fail to meet the Fed. R. Civ. P. 12(b)(6) standard and are aimed at discouraging the exercise of Plaintiffs' speech and petition rights. Plaintiffs hereby respectfully urge this Court to dismiss the counterclaims in Defendants' Answer.

Respectfully Submitted this 19 day of July 2011,

*s/ Charles P. Yezbak, III*

Charles P. Yezbak, III
Tenn. B.P.R. No. 18965
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee  37215
(615) 250-2000
(615) 250-2020 *facsimile*
yezbak@yezbaklaw.com

Jennifer J. Rosenbaum
LSBA No. 31946
*Admitted to practice in the U.S. Dist. Ct., M.D. of Tenn.*
New Orleans Workers' Center for Racial Justice
217 N. Prieur St.
New Orleans, LA  70112
(504) 309-5165
jjrosenbaum@nowcrj.org

Edward Tuddenham
Texas Bar No. 2028300
*Pro Hac Vice Application Anticipated*
1339 Kalmia Rd. NW
Washington, DC  20012
(202) 249-9499
etudden@io.com

## <u>CERTIFICATE OF SERVICE</u>

This is to hereby certify that I have this 19th day of July electronically field the above with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Mekesha H. Montgomery (BPR #25831)
Brian C. Neal (BPR #22532)
424 Church Street, Suite 1600
Nashville, Tennessee 37219
(615) 251-5550
(615) 251-5551 *facsimile*

*Attorneys for Defendants Vanderbilt Landscaping, LLC, Larry Vanderbilt Sr., and Joffrey Vanderbilt*

Matthew A. Boyd
Tennessee Bar No. 017898
Georgia Bar No. 027645
mboyd@hptylaw.com
Ronald G. Polly Jr.
Georgia Bar No. 538264
rpolly@hptylaw.com

*Counsel for the ABM Defendants*

Dated July 19, 2011

*s/ Charles P. Yezbak, III*

Charles P. Yezbak, III