IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HILARIO RAZURA JIMENEZ, et al. ) | |
| ) | |
| v. ) | NO. 3-11-0276 |
| ) | JUDGE CAMPBELL |
| VANDERBILT LANDSCAPING, LLC, ) | |
| et al. ) | |

MEMORANDUM

Pending before the Court is Plaintiffs' Motion to Dismiss Counterclaims (Docket No. 36). For the reasons stated herein, Plaintiffs' Motion is GRANTED in part and DENIED in part.

This action was brought by "temporary guestworkers" who were recruited and brought from Mexico by Defendants to work on contracts with the Tennessee Department of Transportation for highway mowing and litter removal on Tennessee's highways and interstates. Docket No. 1. Plaintiffs allege that Defendants subjected Plaintiffs to extreme exploitation and labor trafficking in violation of federal and state law.

Plaintiffs assert, among other things, that Defendants confiscated Plaintiffs' passports and visas, forced Plaintiffs to live on property owned and controlled by Defendants, threatened Plaintiffs by brandishing firearms and subjecting them to constant surveillance, required Plaintiffs to live in substandard, inhumane living conditions, prohibited Plaintiffs from leaving the "labor camp" without a supervisor, failed to pay Plaintiffs for all the hours worked, retaliated against any Plaintiffs who raised concerns, and specifically forced Plaintiff Gomez to pack his things to leave and unlawfully restrained him until he was forced to board a bus to Mexico. Docket No. 1. Plaintiffs allege causes of action for violations of certain federal statutes, the U.S. Constitution and certain

state statutes. Plaintiffs also assert state law claims for fraud, breach of contract, retaliatory discharge, false imprisonment and outrageous conduct. Docket No. 1.

In response to Plaintiffs' Complaint herein, Defendants filed an Answer and Counterclaims. Docket No. 15. Defendants' Counterclaims arise from alleged "baseless" statements which Defendants claim Plaintiffs Jiminez, Gomez and Luna made to the media from August 2010 until April 2011. *Id.* Specifically, Defendants aver that these Plaintiffs falsely informed media organizations that (1) Defendants confiscated their passports, (2) Defendants subjected Plaintiffs to surveillance, (3) Defendants kidnapped some of the Plaintiffs, (4) Defendants forced the Plaintiffs to work in the heat without breaks, (5) Defendants did not pay Plaintiffs for the time they worked, (6) Defendants forced Plaintiffs to live in sub-standard and/or inhumane conditions, and (7) Defendants brandished guns and pistols to intimidate Plaintiffs. Docket No. 15, ¶ 50. Thus, the alleged false statements in Defendants' Counterclaims track the allegations of Plaintiffs' Complaint.

Defendants allege the following counterclaims against the Plaintiffs: (1) defamation, (2) false light and invasion of privacy, (3) tortious interference with business relations, (4) procurement of breach of contract, (5) intentional infliction of emotional distress, (6) abuse of process, (7) civil conspiracy, (8) concert of action,[1] and (9) punitive damages.[2] Plaintiffs have moved to dismiss all of Defendants' Counterclaims (Docket No. 36).

---

[1] Concert of action is not a separate cause of action from civil conspiracy. To the extent Defendants are asserting it as a separate claim, that claim is dismissed.

[2] Punitive damages is not a cause of action. It is a remedy. Thus, to the extent that Defendants assert punitive damages as a separate cause of action, that cause of action is dismissed. Nothing herein prevents Defendants from seeking punitive damages as a remedy, if appropriate under the law.

2

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## TENNESSEE ANTI-SLAPP ACT

Plaintiffs first claim immunity from Defendants' Counterclaims pursuant to Tennessee's "Anti-Slapp"[3] law, which provides:

> Any person who in furtherance of such person's right of free speech or petition under the Tennessee or United States Constitution in connection with a public or governmental issue communicates information regarding another person or entity to any agency of the federal, state or local government regarding a matter of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency.

Tenn. Code Ann. § 4-21-1003(a).

---

[3] SLAPP stands for Strategic Lawsuits Against Political Participation. Tenn. Code Ann. § 4-21-1001.

3

Defendants have not alleged that Plaintiffs made defamatory statements to a governmental agency. Defendants contend that Plaintiffs' false statements were made to the media. Accordingly, the Anti-Slapp Act provides no protection for Plaintiffs herein.

## FLSA RETALIATION

Plaintiffs also claim that Defendants' Counterclaims constitute retaliation under the Fair Labor Standards Act ("FLSA"). Retaliation is a claim, however, not a defense. Plaintiffs have not brought a claim for FLSA retaliation. A claim for FLSA retaliation does not defeat a defamation claim. A retaliation claim, if proven, could result in money damages, but a claim for FLSA retaliation does not lead to dismissal of these counterclaims.

## DEFAMATION

The crux of Defendants' Counterclaims is that Plaintiffs made allegedly false statements to the media. The allegations which Plaintiffs allegedly made to the media are the same allegations which form the basis of Plaintiffs' Complaint herein. In other words, Defendants assert that the allegations of Plaintiffs' Complaint are false and that when Plaintiffs made those allegations to the media, they defamed Defendants.

Plaintiffs argue first that Defendants' defamation claims are barred by Tennessee's statute of limitations for slander, which is six months. The Counterclaims allege that Defendants' statements to the media were made between August of 2010 and April of 2011. The Counterclaims do not specify that all Defendants' statements were oral. In fact, Count 1 of the Counterclaims is for Defamation/Libel, not Defamation/Slander. Accepting the allegations of the Counterclaims as true, the Court finds that there are insufficient facts from which to determine that Defendants' defamation claims are time-barred. Facts concerning who said what to whom and when and whether

4

the statements were written or oral could be resolved on summary judgment or at trial, but not on a Motion to Dismiss.

Next, Plaintiffs aver that the April 2, 2011 article in the Nashville City Paper was based upon Plaintiffs' lawsuit herein, not upon specific statements directly from the Plaintiffs. As such, Plaintiffs argue, those statements are protected by a judicial privilege and cannot form the basis for a defamation claim. Whether the Nashville City Paper article was based upon this lawsuit or based upon actual statements, oral or written, from the Plaintiffs is also a fact more appropriate for summary judgment or trial, not a motion to dismiss.

Finally, Plaintiffs assert that the defamation counterclaim should be dismissed because the allegedly defamatory statements were not false. That issue is the subject of this lawsuit - whether Defendants treated the Plaintiffs in the ways Plaintiffs claimed they were treated. The truth of those allegations certainly cannot be determined at this stage, without discovery and an opportunity to develop the record.[4] For these reasons, Plaintiffs' Motion to Dismiss the defamation counterclaims is denied[5].

## FALSE LIGHT/INVASION OF PRIVACY

Plaintiffs contend that the counterclaim for false light/invasion of privacy is also barred by the applicable statute of limitations and should be dismissed for the same reasons the defamation

---

[4] For example, Plaintiffs allege that Defendants confiscated their passports; Defendants contend that Plaintiffs asked Defendants to store them. Plaintiffs assert that Defendants required them to live in substandard housing owned and controlled by Defendants; Defendants claim that Plaintiffs could live wherever they wanted.

[5] To the extent Plaintiffs claim that the Counterclaims must show actual malice, which the Court does not find, any questions of actual malice involve factual issues which would have to be determined at summary judgment or at trial.

5

counterclaims should be dismissed. For the same reasons that Defendants' defamation counterclaims cannot be dismissed at this time, neither can Defendants' counterclaim for false light/invasion of privacy be dismissed.

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Defendants allege that Plaintiffs interfered with existing and/or prospective business relations between Defendants and "various governmental entities." Docket No. 15, ¶¶ 76 and 78. In order to establish the tort of interference with business relations, Defendants must show (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach of termination of the business relationship; (4) the defendant's improper motive or improper means and (5) damages resulting from the tortious interference. *Trau-Med of America, Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn. 2002); *Renasant Bank v. Ericson*, 2011 WL 2746712 (M.D. Tenn. July 13, 2011).

Defendants have sufficiently alleged these elements in their counterclaim. Whether these elements can be established involves factual issues which cannot be determined on a Motion to Dismiss. For example, to show an improper motive, a plaintiff must demonstrate that a defendant's predominant purpose was to injure the plaintiff. *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC,* 461 F.Supp.2d 629, 640 (M.D. Tenn. 2006) (quoting *Trau-Med* at n. 5). It is clear that a determination of whether a person acted improperly or possessed an improper motive is dependent upon the particular facts and circumstances of a given case. *Trau-Med*, 71 S.W.3d at 701.

6

Accordingly, Plaintiffs' Motion to Dismiss Defendants' tortious interference with business relations counterclaim is denied.

## PROCUREMENT OF BREACH OF CONTRACT

Defendants allege that Plaintiffs induced "various governmental entities" to breach the terms of their agreements with Defendants. Docket No. 15, ¶ 87. Tennessee recognizes both a common law action and a statutory action for inducement to breach a contract. *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer. *Smith v. Harriman Utility Bd.,* 26 S.W.3d 879, 886 (Tenn. Ct. App. 2000).

The elements of a cause of action for procurement of the breach of a contract are: there must be a legal contract; the wrongdoer must have knowledge of the existence of the contract; there must be an intention to induce its breach; the wrongdoer must have acted maliciously; there must be a breach of the contract; the act complained of must be the proximate cause of the breach of the contract; and, there must have been damages resulting from the breach of the contract. Smith, 26 S.W.3d at 886; Myers, 959 S.W.2d at 158.

Again, Defendants have sufficiently alleged the above elements, and whether they can be established is a question for another day, not for a Motion to Dismiss. Accordingly, Plaintiffs' Motion to Dismiss this counterclaim is denied.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants contend that the Plaintiffs' conduct was so outrageous that it cannot be tolerated by civilized society and that it resulted in serious mental injuries to the individual Defendants. Docket No. 15, ¶¶ 95 and 96.

To state a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). A plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *Brock v. Positive Changes Hypnosis, LLC*, 589 F.Supp.2d 974, 985 (W.D. Tenn. 2008).

Even accepting the assertions of the Counterclaims as true, the Court finds that the alleged misconduct of Plaintiffs - - speaking to the media about the complaints which now form their claims herein - - does not rise to the level of outrageous conduct. Accordingly, Plaintiffs' Motion to Dismiss this claim is granted, and Defendants' counterclaim for intentional infliction of emotional distress is dismissed.

## ABUSE OF PROCESS

Defendants claim that Plaintiffs' primary purpose in filing this lawsuit is to use this Court's process to obtain a collateral or ulterior goal and that Plaintiffs have misused and/or misapplied the judicial process to pursue an end for which it was not designed. Docket No. 15, ¶¶ 103 and 104.

The test for abuse of process is whether process has been used to accomplish some end which is without the regular purview of the process or which compels the party against whom it is used to do some collateral thing he could not legally and regularly be compelled to do. *Givens v. Mullikin*, 75 S.W.3d 383, 401 (Tenn. 2002). Ordinarily, the lawful use of a court's process does not give rise to an abuse of process claim and no claim of abuse of process will be heard if process is used for its

8

lawful purpose, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party. *Id*. However, a different case is presented when the primary purpose of using the court's process is for spite or other ulterior motive. *Id*.

Abuse of process differs from malicious prosecution in that abuse of process lies for the improper use of process *after* it has been issued, not for maliciously causing process to issue. *Bell v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, PA,* 986 S.W.2d 550, 555 (Tenn. 1999). Thus, the mere initiation of a lawsuit, even though accompanied by a malicious ulterior motive, is not abuse of process. *Id*.[6]

Defendants have alleged no use of process other than the filing of this lawsuit, which cannot constitute abuse of process. Defendants' speculation about some use of process in the future cannot support a claim for abuse of process now. Accordingly, Plaintiffs' Motion to Dismiss this counterclaim is granted, and Defendants' counterclaim for abuse of process is dismissed.

## CIVIL CONSPIRACY

Defendants aver that all the alleged misconduct of Plaintiffs was pursuant to a common design to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means. Docket No. 15, ¶ 107. Defendants have sufficiently alleged the elements of a civil conspiracy claim under Tennessee law. *See Baldwin v. Pirelli Armstrong Tire Co.,* 927 F.Supp. 1046, 1053-54 (M.D. Tenn. 1996).

---

[6] Abuse of process does not occur unless the process is perverted; that is, directed outside of its lawful course to the accomplishment of some object other than that for which it is provided. The mere existence of an ulterior motive in doing an act, proper in itself, is not sufficient. *Bell*, 986 S.W.2d at 555.

9

Plaintiffs contend that this claim must be dismissed because Defendants do not state what the common design is, what the unlawful purpose was, what the unlawful means for its accomplishment was, or what overt actions were taken by Plaintiffs in furtherance of the conspiracy. The Court finds that the Counterclaims, taken as a whole and as incorporated into the civil conspiracy count, allege sufficient facts to survive a Motion to Dismiss. Thus, Plaintiffs' Motion concerning the civil conspiracy counterclaim is denied.

## CONCLUSION

For all these reasons, Plaintiffs' Motion to Dismiss Counterclaims (Docket No. 36) is GRANTED in part and DENIED in part. Defendants' counterclaims for intentional infliction of emotional distress and abuse of process are DISMISSED.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE